| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| **MCCARTER & ENGLISH, LLP**<br>John C. Garde, Esq.<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, New Jersey  07102<br>Telephone: (973) 622-4444<br>Facsimile: (973) 624-7070<br>Email: jgarde@mccarter.com<br>Attorneys for Defendants Johnson & Johnson and<br>Johnson & Johnson Consumer Inc. |

| | |
|---|---|
| **In Re:**<br>**Imerys Talc America, Inc.** | **Chapter 11**<br>**Lead Case No. 19-10289-LSS**<br>**District of Delaware** |
| **KAYLA MARTINEZ,**<br><br>                    Plaintiffs,<br><br>      v.<br><br>**AVON PRODUCTS, INC.;**<br><br>**BELCAM, INC.;**<br><br>**BRENNTAG NORTH AMERICA, INC**. (sued<br>  individually and as successor-in-interest to<br>  MINERAL PIGMENT SOLUTIONS, INC. and<br>  as successor-in-interest to WHITTAKER<br>  CLARK & DANIELS, INC.);<br><br>**BRENNTAG SPECIALTIES, INC.** f/k/a<br>  MINERAL PIGMENT SOLUTIONS, INC.<br>  (sued individually and as successor-in-interest<br>  to WHITTAKER CLARK & DANIELS, INC.);<br><br>**CYPRUS AMAX MINERALS COMPANY**<br>  (sued individually, doing business as, and as<br>  successor to METROPOLITAN TALC CO.<br>  INC. and CHARLES MATHIEU INC. and SII-<br>  SIERRA TALC COMPANY and UNITED<br>  TALC COMPANY);<br><br>**IMERYS TALC AMERICA, INC.** (sued | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: MIDDLESEX COUNTY**<br>**DOCKET NO.: MID-L-1120-17 AS** |

individually and as successor-in-interest to
LUZENAC AMERICA, INC. successor-in-
interest to CYPRUS INDUSTRIAL
MINERALS COMPANY);

**JOHNSON & JOHNSON;**

**WHITTAKER CLARK & DANIELS, INC.;**

**JOHN DOE CORPORATIONS 1-50**
(fictitious);

**JOHNSON & JOHNSON CONSUMER, INC.**,
a subsidiary of JOHNSON & JOHNSON, for its
Johnson's Baby Powder and Shower-to-Shower
Talcum Powder Products;

Defendants.

## NOTICE OF REMOVAL

Pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C.

§§ 1334 and 1452, Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.[1]

(collectively, "J&J") hereby remove the claims against J&J in the above-captioned matter (the

"State Court Talc Claims") from Superior Court of New Jersey, Law Division, Middlesex

County (the "State Court"), to this Court.  The grounds for removal are set forth below:

## BACKGROUND

1.      On February 13, 2019, Imerys Talc America, Inc., and two affiliates, Imerys Talc

Vermont, Inc., and Imerys Talc Canada, Inc. (collectively, the "Debtors"), filed a voluntary

chapter 11 petition, commencing a reorganization case styled: *In re: Imerys Talc America, Inc.,*

*et al.,* Case No. 19-10289-LSS, in the United States Bankruptcy Court for the District of

Delaware (the "Chapter 11 Case").

---

[1] To the extent Johnson & Johnson or Johnson & Johnson Consumer Inc. were improperly
designated in plaintiff(s) complaint with either a former or incorrect name, J&J noted the
improper designation in the answer.

ME1 30285902v.1

2.      Since the Chapter 11 Case was commenced, the Debtors have remained as debtors in possession under 11 U.S.C. § 1101 and have the rights, powers, and duties set out in 11 U.S.C. §§ 1107 and 1108.

3.      At the time the Debtors commenced the Chapter 11 Case, the State Court Talc Claims were pending in the State Court. The State Court Talc Claims are not proceeding before the United States Tax Court and are not brought by a governmental unit to enforce its police or regulatory powers.

4.      Among others, J&J and the Debtors are named as co-defendants in the above-captioned matter.  The State Court Talc Claims are those brought against J&J.

5.      The State Court Talc Claims against J&J center on allegations that exposure to the Debtors' talc caused the Plaintiff's injuries—specifically, mesothelioma. J&J disputes these allegations.

6.      The Complaint (attached as **Exhibit A** hereto) generally alleges that exposure to asbestos, contained in the Debtors' talc, through the habitual use of J&J cosmetic talcum powder products, caused the Plaintiff's personal injury and/or wrongful death.   J&J's responsive pleading is attached hereto as **Exhibit B**.

7.      On April 18, 2019, J&J filed in the United States District Court for the District of Delaware (the "District of Delaware") a Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b) (the "Motion"). The Motion and supporting papers[2] are attached hereto as **Exhibit C**. The State Court Talc Claims are among those that J&J seeks to consolidate in the District of Delaware.

---

[2] The supporting papers include a Declaration of John J. Nolan with 18 exhibits, however, only Exhibit 1 is included at this time, and the remaining exhibits are available upon request.

ME1 30285902v.1

8.      Thousands of plaintiffs across the country allege similar personal injury and

wrongful death claims against J&J (the "Talc Claims"). As noted in the declaration supporting

the Debtors' bankruptcy petition, the Debtors have historically been the exclusive supplier of

cosmetic talc to J&J. *See* Declaration of Alexandra Picard, Chief Financial Officer of the Debtors

in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration") ¶ 18

(attached as **Exhibit 1** to the Declaration of John J. Nolan in Support of the Motion, found in

**Exhibit C**). Because the Debtors have historically been J&J's sole supplier of cosmetic talc, the

Debtors are routinely named as a co-defendant in the actions in which the Talc Claims arise.

Even where the Debtors are not so named as co-defendants, however, the Talc Claims are related

to the Debtors' bankruptcy.

9.      28 U.S.C. § 157(b)(5) provides as follows:

> The district court shall order that personal injury tort and wrongful
> death claims shall be tried in the district court in which the
> bankruptcy case is pending, or in the district court in the district in
> which the claim arose, as determined by the district court in which
> the bankruptcy case is pending.

10.     The purpose of this section is to centralize the adjudication of claims, and the

express language of the statute confers authority on the District of Delaware to determine the

proper venue for trial of this civil action. *See, e.g., A.H. Robins Co. v. Piccinin*, 788 F.2d 994,

1011 (4th Cir. 1986) (affirming centralization of thousands of state and federal personal injury

cases against debtors and non-debtor co-defendants in the district court where a bankruptcy was

pending, finding "Section 157(b)(5) . . . expressly confers on the district court sitting in

bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of

any tort case against the debtor pending in other districts."); *Whittingham v. CLC of Laurel, LLC*,

No. 2:06cv11-KS-MTP 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("[T]he ultimate

venue of the trial in the personal injury case should be determined by the District Court where

4

the bankruptcy case is pending."); *see also* 1-3 *Collier on Bankruptcy* ¶ 3.06 (16th ed. 2019) ("Section 157(b)(5) provides that the venue of the [personal injury tort and wrongful death] trial is to be determined by the district court in which the title 11 case is pending. This unusual, perhaps unique, provision empowers a court other than that in which the litigation is pending to decide where the trial is to take place. The court in which the title 11 case is pending has the options of trying the case itself or directing that the trial occur in the district court for the district in which the claim arose.").

11.     Given the pendency of the Motion, J&J believes that this Court cannot and, in any event, should not take any further action in this civil action until the District of Delaware has ruled on the Motion. Because the District of Delaware has the ultimate power to determine venue of the personal injury and wrongful death claims, the District of Delaware necessarily has authority to consider any procedural motions filed in this civil action if the resolution of such motions might have some bearing on the trial of the claims. *See Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 120 (N.D. Ind. 1995) ("Under section 157(b)(5), the district court for the bankruptcy district has sole authority for ultimately fixing venue for [personal injury tort/wrongful death] actions against debtors."). Accordingly, the appropriate course of action is to defer ruling on any motions, including any motions seeking abstention or remand, because the District of Delaware must first determine the venue in which this civil action should proceed.

12.     J&J filed the Motion in pursuit of equitable and uniform outcomes on threshold issues for the Debtors' creditors, the thousands of plaintiffs prosecuting similar claims and actions across the country, the Debtors' themselves, and J&J, and in the interest of efficiency and preservation of judicial resources.

13.     In deciding the Motion, J&J expects that the District of Delaware will address— on a global scale, for all of the Talc Claims—the following issues to the extent they arise:

(i) federal subject matter jurisdiction under 28 U.S.C. § 1334(b), (ii) abstention under 28 U.S.C. § 1334(c), (iii) equitable considerations, if any, favoring remand under 28 U.S.C. § 1452(b), and (iv) the propriety of the removal of the State Court Talc Claims under 28 U.S.C. § 1452(a).

14.     Further, as noted in the Memorandum of Law in Support of Johnson & Johnson's and Johnson & Johnson Consumer Inc.'s Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b) (the "Memorandum of Law") the District of Delaware may exercise its powers under 28 U.S.C. § 157(b)(5) to fix venue for the State Court Talc Claims even if this Court remands the State Court Talc Claims back to the State Court. *See* Ex. C, Memorandum of Law § IV.

15.     Therefore, in the interests of comity, efficiency, and achieving uniform outcomes by coordinated judicial proceedings, J&J respectfully requests that this Court await the District of Delaware's forthcoming decision on the Motion before issuing a ruling on any future motion to remand filed by the Plaintiff in this matter. *See Calumet*, 179 B.R. at 121 ("[A] purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case."). In cases involving transfer and remand motions, courts have held that the "*transferee*" court under section 157(b)(5) is the proper forum to decide the remand motion. *See Whittingham*, 2006 WL 2423104, at *1 ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *see also Calumet*, 179 B.R. at 123 (court stayed all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferred ruling on pending motions because "whichever court ultimately takes the case should be the one that rules on the remaining argument"); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001) (holding that transferee court in

6

multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule

is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]"

until after the case is transferred).

## GROUNDS FOR REMOVAL

16.     A party "may remove any claim or cause of action in a civil action . . . to the

district court for the district where such civil action is pending, if such district court has

jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. §

1452(a). The United States Bankruptcy Court for the District of New Jersey is a unit of the

United States District Court for the District of New Jersey.  28 U.S.C. § 151.

17.     District courts have original jurisdiction to hear all civil proceedings that are,

among other things, "related to cases under title 11."  28 U.S.C. § 1334(b). In this District, under

the Standing Order of Reference dated September 18, 2012, "[a]ny or all cases under Title 11 of

the United States Code and any or all proceedings arising under Title 11 of the United States

Code, or arising in or relating to a case under Title 11 of the United States Code shall be referred

to the bankruptcy judges for the district."

18.     Because J&J has filed the Motion in the District of Delaware, J&J primarily looks

to the Third Circuit's interpretation of related-to jurisdiction. A related-to case represents "the

broadest of the potential paths to bankruptcy jurisdiction." *In re Resorts Int'l, Inc.*, 372 F.3d 154,

163 (3d Cir. 2004). Although such a case does not invoke a substantive right under the

Bankruptcy Code, it is one that "could *conceivably* have an effect on the estate being

administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), *overruled

on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995). "A key

word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *In re

Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991). As clarified by later Third

ME1 30285902v.1

Circuit decisions, *Pacor*'s "conceivable effect" test asks "whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit." *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009) (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227 (3d Cir. 2004), as amended (Feb. 23, 2005)).

19.     In any event, every other U.S. Circuit Court of Appeals has adopted or closely followed the standard for related-to jurisdiction as articulated by the Third Circuit in *Pacor*. *See In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991); *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990); *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 and n. 19 (11th Cir.1990); *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988); *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987); *In re Dogpatch, U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986); *cf. Matter of FedPak Sys., Inc.*, 80 F.3d 207, 213–14 (7th Cir. 1996) ("Our precedents hold that [a] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.") (internal quotation marks omitted).

20.     As more fully described in the Memorandum of Law, there are three bases for exercising related-to jurisdiction over the State Court Talc Claims. *First*, through a series of supply agreements, certain contractual rights and obligations between the Debtors and J&J arose upon the filing of the Complaint asserting the State Court Talc Claims. *See* Ex. C, Memorandum of Law § II.A. *Second*, the Debtors have demanded coverage under certain insurance policies available to J&J. The Debtors' First Day Declaration also claims "[o]ne or more of the Debtors also have rights to the proceeds of insurance policies issued to J&J and its subsidiaries." Ex. C, Nolan Declaration, Ex. 1, First Day Declaration ¶ 28. Additionally, the Debtors were contractually obligated to obtain and maintain insurance naming J&J as an additional insured.

*See* Ex. C, Memorandum of Law § II.B. *Finally*, each bottle of J&J cosmetic talcum powder

purchased by the Plaintiff [or Plaintiffs] contained the Debtors' talc. There exists an identity of

interest between the Debtors and J&J such that the State Court Talc Claims are, in essence,

claims against the Debtors. *See* Ex. C, Memorandum of Law § II.C.

21.     Accordingly, removal of the State Court Talc Claims is proper under 28 U.S.C.

§ 1452(a).

## THE REMOVAL PREREQUISITES HAVE BEEN SATISFIED

22.     Removal of the State Court Talc Claims is authorized by 28 U.S.C. §§ 1334 and

1452. Removal is being accomplished in accordance with Rule 9027 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and the local rules of this Court (the "Local

Rules").

23.     The State Court is located in this District. Venue is proper under Bankruptcy Rule

9027(a)(1).

24.     Bankruptcy Rule 9027(a)(1) requires that this Notice of Removal "contain a

statement that upon removal of the claim or cause of action the party filing the notice does or

does not consent to entry of final order or judgment by the bankruptcy court." J&J states that it

does not consent to the entry of final orders or judgments by the Bankruptcy Court if it is

determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or

judgments consistent with Article III of the United States Constitution. Rather, through the

Motion, J&J requests that the District of Delaware fix venue for the State Court Talc Claims in

the District of Delaware.

25.     Bankruptcy Rule 9027(a)(1) further requires that this Notice of Removal "be

accompanied by a copy of all process and pleadings." The local rules of this Court, however,

provide additional time for J&J to supply the pleadings of the above-captioned proceeding to the

ME1 30285902v.1

clerk of this Court.  The Complaint asserting the State Court Talc Claims is attached hereto as

**Exhibit A**.  J&J's responsive pleading is attached hereto as **Exhibit B**.  A snapshot of the

electronic docket is attached hereto as **Exhibit D**.  If necessary, J&J will make available to this

Court any pleadings upon request. But J&J requests that this Court extend the deadline to

transmit the full State Court record until the District of Delaware issues a decision on the

Motion. *Cf. A.H. Robins Co.*, 788 F.2d at 1016 n.18 ("Until the [venue-fixing] order is made

final with regard to a particular case, a case should not be physically transferred. Thus, no filing

fee shall be paid under Rule 9027 or expenditures accompany photocopying, freight, etc. be

made. Only after the order is final shall the expense of transfer be necessary.").

26.    This Notice of Removal is being filed within ninety (90) days of the order for

relief in the Chapter 11 Case.  No order has been entered in the Chapter 11 Case with respect to

the Civil Action terminating the automatic stay under 11 U.S.C. § 362.  This Notice of Removal

is timely under Bankruptcy Rule 9027(a)(2).

27.    In accordance with Bankruptcy Rule 9027(b), J&J will promptly serve written

notice of this removal to the above-captioned Plaintiff's counsel of record.

28.    All parties to the State Court Talc Claims pending in the State Court are

**HEREBY NOTIFIED** that removal of the State Court Talc Claims will be effected upon the

filing of a copy of this Notice of Removal with the Clerk of the State Court pursuant to

Bankruptcy Rule 9027(c). And "the parties shall proceed no further in that court unless and until

the claim or cause of action is remanded." Bankruptcy Rule 9027(c).

29.    No admission of law, fact, or liability is intended by this Notice of Removal. Nor

does this Notice of Removal waive any defenses available to J&J.

ME1 30285902v.1

30.     If any question is raised as to the propriety of the removal of the State Court Talc

Claims, J&J requests the opportunity to present a brief and oral argument in support of removal,

but would prefer that this Court await the District of Delaware's decision on the Motion.

Dated: April 28, 2019

MCCARTER & ENGLISH, LLP

*/s/ John C. Garde*
John C. Garde, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
(973) 622-4444
jgarde@mccarter.com
Attorneys for Defendants Johnson & Johnson and
Johnson & Johnson Consumer Inc.

11

ME1 30285902v.1